**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lionel Garcon; Marie Garcon, | No. CV-10-1006-PHX-GMS |
| Plaintiffs, | **ORDER** |
| vs. | |
| Union Pacific Railroad Co.; Alberto Hernandez; Todd C. Walters; Luis de la Cruz, | |
| Defendants. | |

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. 75). For the reasons stated below, the motion is granted.

**BACKGROUND**

At approximately 2:00 a.m. on the morning of April 19, 2009, Engineer Alberto Hernandez and Conductor Luis de la Cruz were piloting locomotive UP3923 on train MPSNX-19 through Tempe on a scheduled trip from Phoenix to Tucson. (Doc. 76 ¶ 3). The train was traveling between 15 and 20 miles per hour on a section of track on which the speed limit is either 20 or 25 miles per hour. (Doc. 90 ¶ 3; Doc. 88 ¶ 3). The men noticed what appeared to be a person on or near the tracks, and a nearby police vehicle that they each identified as belonging to the Tempe Police Department. (Doc 88, Ex. 7, 8). They stopped the train, although they were unable to come to a complete stop before the locomotive had passed by the area in which the person appeared to be located. (*Id.*). Believing that the train

1  had injured the person he had seen, Conductor de la Cruz exited the train and proceeded
2  towards the person, in the hopes of applying first aid. (Doc. 88, Ex. 7). On the tracks he
3  found Kerry Garcon ("Garcon"), Plaintiffs' 23-year-old son, who, according to a later
4  autopsy, had died of blunt force trauma. (Doc. 88, Ex. 4). The Tempe Police Department later
5  concluded, relying on video evidence that Plaintiffs dispute, that in fact Garcon had been
6  struck by an earlier train, number MPXTU-18, pulled by locomotive UP5450, which had
7  traveled along the same track earlier that night at 10:10 p.m. (Doc. 88, Ex. 3). Plaintiffs
8  contend both that the video purportedly taken from a camera mounted on locomotive
9  UP5450, which shows a person walking alongside the tracks, is "FORGED and
10 UNVERIFIED," and that the person in the video is "obviously not Kerry Garcon in any
11 shape or form." (Doc. 84 ¶ 9). Defendants allege that Garcon was already dead when the 2:00
12 a.m. train arrived, while Plaintiffs speculate that members of the Union Pacific Railroad
13 Police Department "had all the possibilities to strike at Kerry Garcon, knock him
14 unconscious, set his head on the side of the Railroad, watch under a spot light the train to
15 mulch the left side of his face, flee the area soon after, and later compose a video" to conceal
16 their wrongdoing. (Doc. 84).

17    Plaintiffs filed a wrongful death complaint in Maricopa County Superior Court on
18 April 6, 2010, alleging that Defendants engaged in "negligent, irresponsible, reckless, and
19 dangerous acts" leading to the death of Garcon. (Doc. 1, Ex. 3). Defendants removed the
20 action to the United States District Court pursuant to 28 U.S.C. § 1441 on May 7, 2010.
21 (Doc. 1, Ex. 6). Plaintiffs are citizens of the state of Georgia and are seeking in excess of
22 $75,000, while Defendant Union Pacific is a corporation incorporated under the laws of the
23 State of Delaware, with its principal place of business in the state of Nebraska. (Doc. 1). The
24 case therefore is one over which the district court has original jurisdiction, and therefore
25 removal was proper. 28 U.S.C. § 1441; 28 U.S.C. § 1332. Pursuant to Rule 56 of the Federal
26 Rules of Civil Procedure, Defendants moved for summary judgment on May 3. (Doc. 75).
27 / / /
28

**DISCUSSION**

**I.   LEGAL STANDARD**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324 (1986). Accordingly, summary judgment must be granted to Defendants if Plaintiffs "fail[] to make a showing sufficient to establish the existence of an element essential to [Plaintiffs'] case, and on which [Plaintiffs] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–323. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

**II.   ANALYSIS**

Substantive state law governs state law claims brought in state court and removed for diversity of citizenship. *Erie R. R. v. Tompkins*, 304 U.S. 64, 78–79 (1938). To prevail in a negligence action under Arizona law, "the plaintiff must prove the existence of a duty, a breach of that duty, causation, and damages." *Seisinger v. Siebel*, 220 Ariz. 85, 94, 203 P.3d 483, 492 (2009). The question of whether a defendant owes a plaintiff a duty "is an issue of law for the court to decide." *Maurer v. Cerkvenik-Anderson Travel, Inc.*, 181 Ariz. 294, 296, 890 P.2d 69, 71 (1994). If a defendant does not owe plaintiff a duty, "the defendant cannot be liable, no matter the facts." *Id.*

Regarding the duties that landowners owe those on their property, Arizona follows the general rule from the Restatement of Torts that "the occupier of land owes no duty towards a trespasser except not to wilfully and wantonly injury him after discovering his peril." *Torres v. Southern Pac. Transp. Co.*, 584 F.2d 900, 903 (9th Cir. 1978). Courts interpreting Arizona law have uniformly found that those on the railroad cars or tracks

1 without permission from the railroad are trespassers, and that the railroad does not owe them
2 a duty of care. *See, e.g.*, *Delgado v. Southern Pacific Transp. Co.*, 763 F. Supp. 1509, 1511
3 (D. Ariz. 1991) (railroad owes no duty to trespassers on railway cars); *Barry v. Southern Pac.*
4 *Co*, 64 Ariz. 116, 122–23, 166 P.2d 825, 829 (1946) (railroad owes no duty to person
5 unconscious on track not at a crossing).

6       The Restatement does, however, impose a duty of care on a landowner who knows
7 or should know "that trespassers constantly intrude upon a limited area thereof."
8 RESTATEMENT (SECOND) OF TORTS § 334. Courts applying Arizona law in railroad cases
9 have typically applied the exception of section 334 to areas where the railroad crosses a
10 public throughway, holding that "a railroad company owes to travelers on the highway the
11 affirmative duty of care in the maintenance and safeguardings of its crossings." *Southern*
12 *Pacific R. R. Co. v. Mitchell*, 80 Ariz. 50, 58, 292 P.2d 827, 832 (1956); *see also DeElena*
13 *v. Southern Pac. Co.*, 121 Ariz. 563, 566, 592 P.2d 759, 762 (1979) (railroad "must take
14 precautions commensurate with the danger involved at the crossing"). The exception may
15 also apply to commonly-used pedestrian walkways, so long as the victim is struck while
16 using such a walkway. *See Beesley v. Union Pacific R. Co.*, 430 F. Supp. 2d 968, 970 (D.
17 Ariz. 2006) (person who had fallen asleep on tracks in commonly-used pedestrian crossing
18 cannot take advantage of the exception of § 334).

19       Even viewed in the light most favorable to Plaintiffs, the evidence does not establish
20 that the railroad owed Garcon a duty of care. Plaintiffs allege, for example, that the videotape
21 evidence is faulty, and that Garcon was struck by the 2:00 a.m. train. (Doc. 83).No matter
22 which train struck Garcon, however, Plaintiffs do not claim that the area where Garcon was
23 struck was a crossing, and they do not put forth evidence that Garcon had been walking over
24 a commonly used footpath. As such, Defendants did not owe Garcon a duty of care. *See*
25 *Beesley*, 430 F. Supp. at 970; *Barry*, 64 Ariz. at 122–23.

26       Plaintiffs instead allege that Union Pacific police officers assaulted Garcon, placed
27 him on the tracks, and watched as the train struck him. (Doc. 84). The only evidence they
28 offer for this theory is that engineer Hernandez and conductor de la Cruz both stated that they

1   saw a police car nearby when they stopped the train. (Doc 88, Ex. 7, 8). Deducing from these
2   statements that police officers or others had assaulted Garcon and intentionally left him on
3   the tracks to die is pure invention, and does not even "show that there is some metaphysical
4   doubt as to the material facts." *Matsushita*, 475 U.S. at 586–87. Plaintiffs have had adequate
5   discovery opportunity to obtain evidence to support their theory, and apart from statements
6   supporting the presence of a police car, have provided none.

7   Once railway employees realize that a person is in the path of the railway, even if that
8   person is a trespasser, they have a duty "to carry on [their] activities upon the land with
9   reasonable care for the trespasser's safety." RESTATEMENT (SECOND) OF TORTS § 336 (1965).
10  Here, Plaintiff alleges that the train was speeding on the track too quickly to safely brake
11  before striking Garcon. (Doc. 84). Plaintiffs and Defendants agree that the train was traveling
12  no faster than 20 miles per hour when de la Cruz and Hernandez first saw Garcon. (Doc. 84;
13  Doc. 90 ¶¶ 3–4). Plaintiffs submit the *Federal Railroad Administration Track Safety*
14  *Standards Compliance Manual*, which states that the speed limit on "Class One" track is 10
15  miles per hour and the speed limit for "Class Two" track is 25 miles per hour. (Doc. 88, Ex.
16  9). They further submit a portion of the *State of Arizona Rail Safety & Security Resource*
17  *Guide*, which states that Union is one of Arizona's "two Class I railroads." (*Id.*). Defendants
18  submit an expert report by Brian Heikkila that finds that the section of track in question is
19  "Class Two" track, which carries a speed limit of 25 miles per hour. (Doc. 90, Ex. 3).
20  Plaintiffs have offered no evidence that Union, as a Class I railroad, operates exclusively on
21  "Class One" track, a conclusion that would require all Union railcars to travel under 10 miles
22  an hour at all times. Moreover, Plaintiffs have elsewhere conceded that they believe that the
23  speed limit on the section of track where Garcon was struck is 20 miles per hour. (Doc. 88
24  ¶ 3). There is no evidence the train was speeding. Plaintiffs' only other piece of evidence that
25  the train was being operated recklessly is a newspaper article that reported that the train took
26  1,000 feet to stop. (Doc. 88 Ex. 8). The article is inadmissible hearsay not subject to any
27  exception, and is flatly contradicted by Engineer Hernandez, who claims that the train
28  stopped within 50 to 100 feet of braking. FED. R. EVID. 802; (Doc. 88, Ex. 8). Plaintiffs have

failed to raise a genuine issue of material fact regarding whether Hernandez and de la Cruz operated the train with reasonable care once they saw Garcon.

The existence of a duty of care by Defendants towards Garcon is an "element essential to [Plaintiffs] case, and on which [Plaintiffs] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–323. Plaintiffs have not alleged that Garcon had permission to be on the railway. Defendants have shown that the area where he died was neither a crossing nor a path commonly used by the public. While Plaintiffs contest that Garcon was rendered unconscious and his head placed on the track in a location where he would have been trespassing, they offer no admissible evidence from which a reasonable fact finder could draw such a conclusion. As such, the railway did not owe him a duty of care. *See Beesley*, 430 F. Supp. 2d at 970; *Barry*, 64 Ariz. at 122–23.

## CONCLUSION

Plaintiffs have failed to raise an issue of fact as to whether Defendants owed Garcon a duty of care—whether Garcon was walking in the path of the earlier train or lying on the railroad tracks and struck by the later one. Further, they have produced no admissible evidence that the engineer and the conductor failed to operate the train with reasonable care once they noticed Garcon on the tracks. They have not produced evidence from which a reasonable finder of fact could accept their theory that Garcon was assaulted and placed on the train tracks. Therefore, Plaintiffs' claims fail as a matter of law and Defendants' motion for summary judgment is granted.

**IT IS THEREFORE ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. 75) is **GRANTED**.

2. The Clerk of Court is directed to **terminate this lawsuit**.

DATED this 2nd day of November, 2011.

*A. Murray Snow*
G. Murray Snow
United States District Judge

- 6 -